Roy COWAN, an infant of 15 years of age, who sues by his next friend and mother, Helen Cowan, Plaintiff in Error,

v.

John A. PEARSON, Defendant in Error.

No. 38215.

Supreme Court of Oklahoma.

May 5, 1959.

Rehearing Denied Aug. 9, 1960.

W. H. McConnell, Oklahoma City, for plaintiff in error.

Luttrell & Luttrell, Norman, for defendant in error.

HALLEY, Justice.

Roy Cowan, a minor 15 years of age, by his mother, Helen Cowan, filed this action for personal injuries against John A. Pearson in the District Court of Cleveland County, Oklahoma. The court sustained a demurrer to the evidence of plaintiff and plaintiff has appealed. We shall refer to the parties as they appeared in the trial court, or by name.

Plaintiff alleged that the defendant owned and resided upon land located on West Main Road outside the City of Norman, Oklahoma, and had constructed and maintained thereon a concrete water tank, used at times as a swimming pool; that about August 10, 1956, the defendant through Fred Jennings, his foreman, agent servant and employee, orally employed plaintiff to clean the bottom of the water tank, and to furnish plaintiff the necessary cleaning equipment for the cleaning of the pool; that in accordance with such agreement, plaintiff entered the drained pool and commenced cleaning operations, removing scum, algae and moss which had accumulated on the bottom of the pool, with the equipment and materials furnished by defendant and at defendant's request, through Fred Jennings.

It was further alleged that due to the negligence of defendant plaintiff suffered permanent physical injuries which reduced his earning power, caused him mental pain and suffering, all due to the negligence of defendant as follows:

That defendant knew that the floor of the tank was exceedingly slick but failed to advise or warn plaintiff of such dangerous conditions; failed to furnish plaintiff nonskid boots or shoes or other protective equipment or clothing; that defendant knew plaintiff was young and inexperienced, but failed to caution and warn him of the dangers to be encountered; failed to provide plaintiff a reasonably safe place to work and that as a consequence the plaintiff fell on the concrete floor of the tank and suffered a large herniation of the fifth lumbar disc and left side of his back, which required hospitalization and surgical treatment to remove said disc; that as a result, the plaintiff suffered temporary total disability and permanent partial disability, and continues to suffer physical pain, severe mental pain and suffering.

Plaintiff alleged that prior to his injuries on August 10, 1956, he was strong and active, with excellent health and a life expectancy of about fifty years, but is now permanently disabled to the extent of fifteen per cent as a result of his injuries, and will always suffer pain and mental anguish.

Plaintiff alleged that he had been damaged in the sum of $70,180, and prayed for judgment for that amount against defendant, and costs of this action.

Defendant admitted that he owned the premises mentioned by plaintiff, and that he maintains a concrete water tank thereon for the purposes of storing water for irrigation of trees, plants and shrubs and for fire protection.

He further admits that plaintiff and others have been permitted to use the tank for bathing and swimming, but made no charge to any one for such use, and never required plaintiff or any other person to clean the tank for the privilege of using it for swimming; that Fred Jennings has for some years been an employee of his, but denies that Jennings was ever his agent with authority to employ plaintiff or any other person to clean the tank or do other work about the premises, and denied that he has ever employed plaintiff to clean the water tank, assist in its cleaning or do any other work about the premises; and, that if plaintiff was injured while cleaning the water tank, plaintiff was guilty of contributory negligence in that he failed to use due care for his own safety in avoiding slipping and falling, because plaintiff had such experience that he knew the risks and dangers thereof, they being obvious and could be seen and known by any person engaged therein.

During the introduction of the evidence the plaintiff offered to introduce in evidence portions of the depositions taken February 16, 1957, of defendant Pearson and Fred Jennings as admissions against interest. Defendant advised that both were in court and available to testify, and the court ruled that the depositions should not be read in evidence.

The plaintiff rested and the defendant demurred to the evidence, as insufficient to prove any cause of action against the defendant. The demurrer was sustained. The plaintiff moved the court to permit him to make a record of parts of the depositions which had been excluded. Plaintiff was permitted to read into the record portions of these depositions.

Plaintiff testified that he was a minor 15 years of age when the accident involved occurred, and a sophomore in Norman High School. He was injured Auguet 10, 1956, having learned from a friend, George Gifford, the night before that they were going to clean out the pool on defendant's premises, west of Norman. When work on cleaning out the pool began there was no one there except plaintiff, George Gifford and Anthony Watson. Fred Jennings was not present but he was there during the time they were working; each boy had a broom and a large wooden scraper to use for pushing the scum down toward the drain in the tank; that Fred Jennings was employed for defendant as "foreman", and had the responsibility of "watering and taking care of all the plants, mowing and they also had a dairy barn that he took care of."

Plaintiff testified that he fell in the pool while pushing a wooden scraper; that his hands slipped, then his feet slipped from under him and he lost his balance; that the tank was slippery where he fell; that he had some pain when he fell but said nothing to the boys he was working with; had lunch with Jennings and the boys and during the afternoon helped them clip the lawn; that he was not paid anything for his work, but "understood" that he would have the privilege of swimming in the pool; that he had no conversation with the defendant except long previous to the date of his injury.

Plaintiff further testified that the only instructions given him were by Fred Jennings, defendant's agent, who told him to get into the tank and clean the sediment from the bottom; that he was inexperienced in such work and was given no protective equipment or clothing, and was not warned of the slippery condition on the bottom of the tank, and no supervision was given of his work by defendant or Fred Jennings, and that the only equipment given him were a scraper brush and broom;

and that his fall was due to the slippery condition of the bottom of the tank; that he was paid nothing for his work except the privilege of using the pool; that he wore a bathing suit and was barefooted; that he knew the bottom of the pool was slick and that he was liable to fall.

Plantiff testified that he suffered severe pain from his fall and went to a doctor and was finally operated on in September, 1956, for a ruptured intervertebral disc which was removed and at the trial he testified that he had recovered from his fall.

Plaintiff first contends that his direct testimony was sufficient to make a prima facie case against the defendant.

While plaintiff testified that Fred Jennings, with whose permission he was helping clean the pool when he was injured, was the "foreman" of the defendant, there is no proof in the record that Jennings was foreman or that he had any authority to employ the plaintiff or any other person to clean the pool. Plaintiff testified that he dealt only with Jennings about the use of the pool and that he did not tell him that he had to clean out the pool in order to swim in it, but it was a "kind of" understanding to that effect.

Plaintiff cites the case of Fisher **v.** Prairie, 26 Okl. 337, 109 P. 514, and Myhan v. Louisiana Electric Light & Power Co., 41 La.Ann. 964, 6 So. 799, 7 L.R.A. 172. In both of these cases the unwarned employees were working with highly charged electric power lines and the danger was concealed and an inexperienced worker could not see or know the concealed dangers. These cases are not in point here. Neither is Donahoe v. Moulton, Okl., 300 P.2d 655, wherein the plaintiff was injured in falling while cleaning out the bottom of a swimming pool of defendant with a cleaning fluid containing muriatic acid furnished by defendant, who told plaintiff to use it. While using it the plaintiff fainted or fell on the floor of the pool and was injured. Plaintiff's cause of action was based upon the failure to warn him of the dangers of using the acid and

failing to instruct him in safety measures, and in failing to provide him with safety equipment. Defendants admitted that they knew the acid was dangerous. This case is not in point. In the case at bar no negligence on the part of the defendant is shown. The plaintiff knew as much about the conditions in and about the tank as did the defendant. Although we do not think plaintiff was an employee of the defendant, even if he had been, proof on this point completely failed.

■ The case of Oklahoma City Construction Co. v. Peppard, 43 Okl. 121, 140 P. 1084, is distinguishable from the case at bar for there the question to be determined was whether the construction company was an independent contractor or the agent of Mr. Skirvin in the construction of the Skirvin Hotel in Oklahoma City and there was evidence that Mr. Skirvin himself contracted the brick work in which plaintiff deceased was engaged at the time he met his death. In the case at bar the plaintiff had no contract with defendant and was performing services for his own pleasure and without contract. An examination of all the evidence convinces us that it does not establish that plaintiff was an employee of the defendant at the time of the accident. There is no proof that Fred Jennings was a "foreman" except the bare statement of the plaintiff that he performed certain work for defendant, and constituted merely a conclusion of law, and so construed by the court. Plaintiff admitted that all he knew was that Jennings lived on and had certain tasks to perform on the premises. There is no evidence that Jennings ever employed any person to work for the defendant. The rule is well established that only where an emergency exists that an agent or employee, without such authority, may employ another. In Section 165, 35 Am.Jur., Master and Servant, p. 594, it is stated that:

"It is the emergency that gives rise to the implied authority; and if it does not in fact exist, then neither does the implication of authority arise. In order to support a finding that an

emergency existed, the evidence must show that the situation was created suddenly and unexpectedly. * * *"

The plaintiff admitted that no emergency existed for cleaning the pool on the day he was injured. He had not seen the defendant for some time and claimed no direct employment by any one except Fred Jennings. He did not claim to have any direct contract with the defendant; he failed to show any contract of employment with Jennings; no proof of authority on the part of Jennings to employ or proof of any emergency in cleaning the pool. We think that Caldwell v. Crozier, 100 Okl. 175, 228 P. 974, is controlling in the case at bar.

■ We further think that the plaintiff was a licensee under the proof offered in this case and in accordance with the rule pronounced by us in Julian v. Sinclair Oil and Gas Co., 168 Okl. 192, 32 P.2d 31.

■■ Since the plaintiff contends that he was an employee of the defendant and has failed in his proof to establish such relationship, we see no need to determine whether the plaintiff was a licensee or invitee. In either category the plaintiff has not proved that the defendant failed to exercise ordinary care for plaintiff's well-being while on the defendant's premises.

In City of Drumright v. Moore, 197 Okl. 306, 170 P.2d 230, 231, this Court said:

"The duty of an owner or occupant of premises to keep them safe for invitees extends only to defects or conditions which are in the nature of hidden dangers, such as are not known to the invitee, and would not be observed by him in the exercise of ordinary care."

In City of Grandfield v. Hammonds, 100 Okl. 75, 227 P. 140, 142, this Court held that:

"Without question, the owner or occupier of premises owes, even to a trespasser, the duty to refrain from willfully or wantonly injuring him aftter he is aware of his presence on the premises, but there is no evidence in the record of any conduct of that kind in the case."

Again in Atchison, T. & S. F. Ry. Co. v. Powers, 206 Okl. 322, 243 P.2d 688, it is announced in the first paragraph of the syllabus as follows:

"Ordinarily, a landowner owes no duty of active care toward either an adult or infant on landowner's premises without an invitation, express or implied, and neither silent acquiescence, nor permission is, alone, sufficient to establish an invitation."

■ Did the court err in refusing to permit plaintiff to introduce portions of defendant and his agent, Jennings' depositions, as admissions against interest? It is not disputed that these witnesses were present and available to testify. Section 433, 12 O.S.1951, provides the deposition of any witness may be used only under three circumstances, to-wit: Where witness does not reside in county where case is pending; unable to attend court or is dead; and where testimony is required upon motion or in any other case where oral testimony of witness is not required.

Section 447, 12 O.S.1951, is as follows:

"When a deposition is offered to be read in evidence, it must appear to the satisfaction of the court that for some legal cause the attendance of the witness cannot be procured."

Since the right to take depositions is a creature of statute, the right to take or use them is governed by statute. In State ex rel. Westerheide v. Shilling, 190 Okl. 305, 123 P.2d 674, 678, the above rule is announced and it is further said:

"We conclude that the statutes are plain and need no construction. The courts have no right to make exceptions not contained in the statutes. The right to take the deposition is not limited by the restrictions on its use. * * *"

In view of the above case, we find no necessity to discuss cases from other states

and we find no error in refusing to admit parts of these depositions.

A careful consideration of all the evidence introduced by plaintiff convinces us that such evidence fails to make a prima facie case in favor of plaintiff.

The judgment is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON, BLACKBIRD, JACKSON and BERRY, JJ., concur.